■ SUPPORT SYSTEMS ASSOCIATES, INC., Respondent, v JOSEPH F. TAVOLACCI, Appellant, et al., Defendant.—In an action, inter alia, to recover damages arising out of the breach

of an employment agreement not to solicit business from the plaintiff's customers, the defendant Joseph F. Tavolacci appeals, as limited by his brief, from so much of a judgment of the Supreme Court, Suffolk County (Tanenbaum, J.), entered May 19, 1986, as is in favor of the plaintiff and against him in the principal sum of $91,036.

Ordered that the judgment is affirmed insofar as appealed from, with costs.

The plaintiff Support Systems Associates, Inc. is a defense contractor which manufactures automatic testing equipment and provides engineering services ancillary to the manufacture and installation of that equipment. The defendant Joseph Tavolacci is an electrical engineer who was employed by the plaintiff from May of 1978 through February 11, 1983. The restrictive covenant in his employment contract, insofar as relevant, provided that "for a period of six months after termination of employment [the appellant] agrees not to solicit any of the past or present customers or future prospects of Employer (which customers or prospects exist at the time of Employee's termination) with respect to said business".

Since 1981 Rockwell International (hereinafter Rockwell) had been the plaintiff's most important and lucrative client. The plaintiff bid for and won the first three phases of a contract projected to be completed in five phases. The contract involved the definition by the plaintiff of the requirements for automatic test equipment and test programs for the B-1 Bomber program which was to be developed by Rockwell on behalf of the United States Air Force.

The plaintiff created a separate division to service Rockwell. In 1982, the appellant was named vice-president of the division responsible for Rockwell's B-1 Bomber program. Only 5 or 6 employees were familiar with Rockwell's requirements. The appellant was given access to the plaintiff's confidential pricing information, not afforded to any of the other divisions, in order to enable the plaintiff to respond rapidly to Rockwell's requests. The bids prepared by the appellant included statements of the plaintiff's management approach, recruiting plan, quality control, and the numbers of units to be worked on. The plaintiff considered these statements confidential because of the manner in which the United States Department of Defense rates these factors. The pricing and cost information provided to the appellant was also confidential because if it were known to competitors, they would be in a position to underbid the plaintiff and consequently to win the contracts that plaintiff was competing for. In addition, the plaintiff's

customers were required to maintain the confidentiality of bids by United States Department of Defense procurement regulations.

In December 1982 the appellant assured the plaintiff that it would be awarded phase four of the Rockwell contract. When the appellant offered his resignation to the plaintiff on January 26, 1983, he was in the process of procuring phase four of the Rockwell contract on behalf of the plaintiff. He continued to preside over the B-1 Bomber division until February 11, 1983, the effective date of his resignation.

On April 1, 1983, the appellant became employed by the defendant Matec Consultants, Inc. (hereinafter Matec). At that time, Matec was not capable of producing test requirement documents or military test program sets to enable it to compete for Rockwell's B-1 Bomber business. Nonetheless, the appellant prepared a competitive bid on behalf of Matec for phase four of the B-1 Bomber contract. Rockwell requested various modifications. Thereafter, the appellant hired 10 of the plaintiff's employees who had worked on the earlier phases of the B-1 contract and set up a new and separate military division at Matec. In late March or early April, the military division began performing engineering services related to phase four under an oral agreement with Rockwell. In July 1983 Matec was awarded a written contract for the phase four work which incorporated all those services performed by Matec since April.

The plaintiff's contract for phase three work with Rockwell expired on March 31, 1983. Its initial bid for phase four work was submitted on or about April 4, 1983, but was rejected. The appellant conceded that the reason the plaintiff was not awarded phase four of the Rockwell contract was because Matec had secured the business first.

The information compiled by the plaintiff in generating the Rockwell proposals was highly confidential and entitled to trade secret protection (see, Restatement of Torts § 757, comment b [1939]; see also, Delta Filter Corp. v Morin, 108 AD2d 991). The evidence adduced at trial established that the appellant utilized the plaintiff's confidential information to wrongfully solicit the business of the plaintiff's most important customer in violation of the nonsolicitation covenant. Even in the absence of a contract restriction, a former employee is not entitled to solicit customers by fraudulent means, the use of trade secrets, or confidential information (see, Catalogue Serv. v Henry, 107 AD2d 783; 53 Am Jur 2d, Master and Servant,

§§ 106, 107; *see also, Reed, Roberts Assocs. v Strauman,* 40 NY2d 303, 306-308, *rearg denied* 40 NY2d 918; Restatement of Torts § 757, comment b [1939]). In any case, the six-month restriction on the solicitation of customers is a reasonable restraint, narrowly tailored to protect the employer's legitimate interests and not unduly burdensome to the employee or to the public *(see, e.g., Uniform Rental Div. v Moreno,* 83 AD2d 629).

The trial court properly awarded the plaintiff damages in "the amount [that] the plaintiff would have made except for the defendant's wrong" *(Santa's Workshop v Sterling,* 2 AD2d 262, 267, *affd* 3 NY2d 757; *see also, McRoberts Protective Agency v Lansdell Protective Agency,* 61 AD2d 652, 655). The appellant himself testified that prior to his resignation he was confident that the plaintiff would be awarded phase four of the Rockwell contract and further conceded that the reason the plaintiff was not awarded the subject contract was because Matec had already secured the business as early as March of 1983. Moreover, there is no basis for reduction of the damages awarded the plaintiff since the appellant failed to rebut the plaintiff's proof that it suffered a loss of $91,036 in net profits due to the appellant's wrongful solicitation *(see, Borne Chem. Co. v Dictrow,* 85 AD2d 646, 651). Thompson, J. P., Brown, Eiber and Sullivan, JJ., concur.